## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| FOLEY INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-00309-CV-RK |
| | ) | |
| KAMMY NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Kammy Nelson's motion to dismiss (Doc. 13). The motion is fully briefed. (Docs. 14, 16, 21.) For the reasons below, the motion to dismiss (Doc. 13) is **GRANTED in part and DENIED in part.** Specifically, the Court will dismiss Count II (Violation of the Computer Fraud and Abuse Act ("CFAA")) and Count III (Violation of the Stored Communications Act ("SCA")) but deny the motion as to Count I (breach of contract), Count IV (violation of the Missouri Computer Tampering Act ("MCTA"), §§ 537.525, 569.095, Rev. Stat. Mo.), and Count V (breach of the duty of loyalty).

## Background

Plaintiff Foley Industries, Inc.'s First Amended Complaint (FAC) (Doc. 10) sets forth the relevant background.[1] For purposes of analyzing Defendant's motion to dismiss for failure to state a claim upon which relief may be granted, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (citation and quotation marks omitted). The standard governing Defendant's factual challenge to subject matter jurisdiction will be set forth in the Court's analysis of that challenge.

Plaintiff serves as the exclusive Caterpillar dealer for Kansas and western Missouri, providing the sale and rental of construction equipment and equipment for the oil and gas industries. Doc. 10 at ¶ 12. On or about July 13, 2020, Defendant was hired as a Credit Manager for Plaintiff. *Id.* at ¶ 15. As part of her daily duties, Defendant managed the credit department and

---

[1] The Court did not consider Exhibit A to Defendant's Reply (Doc. 21-1), its attached exhibits, and the related argument, and Plaintiff's Motion to Strike (Doc. 25) is denied as moot.

performed many tasks including exercising control over accounts receivable, performing credit underwriting, establishing bad debt reserves, managing past-due accounts, coordinating with Plaintiff's legal department, collaborating with internal customers, managing credit risks, and administering credit policies and standards. *Id.* at ¶ 16. As credit manager, Defendant had access to confidential and proprietary information belonging to Plaintiff and its customers. *Id.* at ¶ 18. To ensure protection of the confidential information, Plaintiff required Defendant to sign a non-disclosure agreement ("NDA") as part of her employment. *Id.* at ¶ 19. On July 13, 2020, Defendant signed the agreement. *Id.* By the NDA's terms, Defendant was prohibited from disclosing the proprietary information of the company to anyone, except on a need-to-know basis, and was prohibited from using the proprietary information for her benefit. *Id.* at ¶ 21. Additionally, at the start of her employment, Defendant obtained and acknowledged a copy of Plaintiff's employee handbook, which noted that she was authorized to access and use Plaintiff's computers and information-technology system but was limited to doing so for business purposes. *Id.* at ¶¶ 22, 27.

On January 15, 2021, Defendant received information indicating her employment would be terminated with Plaintiff on January 18, 2021. *Id.* at ¶ 30. After receiving that information, on or about January 15 through January 17, 2021, while at the office or using remote access to Plaintiff's computer systems, Defendant logged into the system on her company-issued computer and forwarded dozens of emails and documents from her Foley email account, KJNelson@foleyeq.com, to her personal email account, kammynelson@gmail.com. *Id.* at ¶¶ 31, 32. The forwarded emails contained Plaintiff's proprietary information and/or confidential information about and belonging to Plaintiff's customers. *Id.* at ¶ 33. Defendant then deleted the emails she forwarded to her personal account from her company-issued computer and/or Plaintiff's server. *Id.* at ¶ 35.

Additionally, Defendant modified and altered a number of emails, including one sent on January 13, 2021, by Plaintiff's Vice President of Sales, Jeff Fouraker, to Defendant's supervisor, Steve Liggett. *Id.* at ¶¶ 33, 38. The original email sent by Fouraker stated "Here's another." *Id.* at ¶ 38. On or about January 16, 2021, Defendant altered and modified the original email to insert the statement "result of your credit nazi" after the text "Here's another." *Id.* at ¶ 39. Defendant then forwarded this altered email to her personal email account as well. *Id.* at ¶ 41.

2

On January 18, 2021, Defendant's employment with Plaintiff was terminated, unrelated to the forwarding and altering of the emails. *Id.* at ¶ 48. After Defendant's termination, Plaintiff routinely attempted to secure its technology infrastructure and noticed unusual activity on Defendant's account. *Id.* at ¶ 49. Plaintiff then conducted an internal preliminary examination into the unusual activity and further retained a third-party information technology expert to complete a forensic review of Defendant's company-issued computer devices and her Foley email account to determine the full scope of the conduct. *Id.* at ¶¶ 50, 51. Plaintiff alleges between its internal investigation, third-party forensic investigation, and associated legal fees, Plaintiff incurred over $35,000 in damages as a result of Defendant's actions.[2] *Id.* at ¶ 52.

Plaintiff filed its FAC against Defendant on July 14, 2021, asserting claims for: breach of contract (Count I); violation of the CFAA, 18 U.S.C. § 1030, et seq. (Count II); (3) violation of the SCA, 18 U.S.C. § 2701 et seq. (Count III); violation of the MCTA, §§ 537.525, 569.095, Rev. Stat. Mo. (Count IV); and breach of the duty of loyalty (Count V).

Defendant's motion to dismiss argues Plaintiff's Counts II and III should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and Plaintiff's remaining state law claims in Counts I, IV, and V should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## Legal Standards

### I. Rule 12(b)(6) Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss a party's claims for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences

---

[2] Defendant alleges pre-suit discussions between counsel indicate Plaintiff's incurred damages consisted only of costs "over $5,000" and that this amount was corroborated in the original Complaint, in which Plaintiff alleged damages of over $5,000 for "third-party forensic investigation and its own internal investigation." Doc. 14, Page 17. However, an amended complaint supersedes the initial complaint in its entirety and renders the original complaint without legal effect. *Topchian v. JPMorgan Chase Bank*, 760 F.3d 843, 846 (8th Cir. 2014). Thus, the FAC that alleges $35,000 in damages as a result of Defendant's actions supersedes any amount of damages mentioned in the original complaint.

in favor of the nonmoving party." *Cole*, 599 F.3d at 861 (citation and quotation marks omitted). "In addressing a motion to dismiss, [t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation and internal quotation marks omitted).

## II.    Rule 12(b)(1) Lack of Subject Matter Jurisdiction

Rule 12(b)(1) provides for a motion challenging the federal court's subject matter jurisdiction. Dismissal of an action is appropriate if the court does not have subject matter jurisdiction over a claim. *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018); Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction refers to the court's power to decide a certain class of cases." *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). Federal courts are courts of limited jurisdiction and cannot hear a claim unless specifically authorized by the Constitution or a federal statute. *Rasul v. Bush*, 542 U.S. 466, 489 (2002). "Generally speaking, a federal court's subject matter jurisdiction over a case must be based on either [a] federal question . . . or diversity." *Miller v. Clark*, 2013 U.S. Dist. LEXIS 196713, at *1 (W.D. Mo. June 14, 2013).

In deciding a Rule 12(b)(1) motion, a district court is required to distinguish between a facial attack and a factual attack. *Croyle*, 908 F.3d at 380. "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, the Court "may look outside the pleadings to affidavits or other documents." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). The party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction— its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[No presumption of] truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Titus*, 4 F.3d at 593 n.1. Finally, "[i]t is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

4

"Federal-question jurisdiction exists when the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 906 (8th Cir. 2005) (internal quotation marks and citation omitted). Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). If any plaintiff is a citizen of the same state as any defendant, diversity jurisdiction does not exist. *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007). "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).

## Discussion

### I.  Count II - CFAA Claim

Federal courts have noted the CFAA is a criminal statute that was intended to create a cause of action against computer hackers. *Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg., & Consulting, LLC*, 600 F. Supp. 2d 1045, 1049 (E.D. Mo. 2009). To ensure "digital fraudsters are held accountable without overheating federal prosecutors," Title 18 U.S.C. § 1030(g) provides for a private citizen who suffers damage or loss by reason of a violation of the CFAA to bring a civil action for compensatory damages and injunctive relief. *Speckman v. Fabrizio*, 2021 U.S. Dis. LEXIS 125034, at *8 (N.D.N.Y. July 6, 2021); *see generally*, 18 U.S.C. § 1030. Section 1030(g) contains an express limitation, however: "A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." Thus, a civil action is provided for where a person "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer" and caused or would have caused, in relevant part "loss to 1 or more persons during any 1-year period. . . aggregating at least $5,000 in value[.]" § 1030(a)(2)(c), § 1030(c)(4)(A)(i)(I).

CFAA defines a "protected computer" as including one that "is used in or affecting interstate or foreign commerce or communication." § 1030(e)(2)(B). CFAA defines "loss" as meaning "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(11).

5

The parties do not dispute that the computer and computer system Defendant used and accessed was a protected computer under the CFAA, as it is used in and affects interstate commerce in connection with Plaintiff's sale of construction, oil, and gas equipment. Additionally, Plaintiff alleges it suffered a loss in excess of $35,000, including the costs of responding to Defendant's violations, hiring a third-party information technology vendor to conduct a full investigation, conducting its own initial investigation, and associated legal fees. However, the element of intentionally accessing a computer "without authorization" or "exceed[ing] authorized access" is disputed.

Plaintiff alleges although Defendant used her "limited access to Foley's IT system" to access the computer and email system, she exceeded her authorization by obtaining various emails and documents by sending them to her personal email account and additionally exceeded authorization by materially altering and modifying emails for her own benefit and deleting the record of forwarding the emails. Doc 16 at 8. Plaintiff relies in part on section 1030(e)(6), which defines the term "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Plaintiff alleges that since Defendant did not have authorization to forward emails to her personal account or alter or delete emails, by doing so, she exceeded her authorized access under the plain definition as set forth in the statute.

However, in *Van Buren v. United States*, the Supreme Court interpreted the meaning of "exceeds authorized access" and cleared up the split between circuits on whether the CFAA imposes civil liability on those who access information with authorization, but for an improper purpose. The *Van Buren* Court determined that "access," as mentioned in the CFAA, references "the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases." 141 S. Ct. 1648, 1657 (2021). The Court went on to determine that it is therefore consistent to equate the phrase "'exceed[ing] authorized access' with the act of entering a part of the system to which a computer user lacks privileges." *Id.* at 1658.

With this clarification in mind, Plaintiff fails to plead Defendant accessed the protected computer either without authorization or that she exceeded her authorized access by entering a part of the computer system to which she lacked privileges. Plaintiff alleges in the FAC, "Nelson was authorized to access and use Foley's computers and information-technology system." Doc. 10 at ¶ 27. Furthermore, in the FAC, Plaintiff notes, "Nelson logged into the system on her company-

issued computer and forwarded dozens of emails and documents from her Foley email account . . . to her personal email account." *Id.* at ¶ 32. Thus, Plaintiff's own allegations as to violation of the CFAA do not set forth that Defendant entered the computer system without authorization or that she entered a part of the computer system to which she lacked authorization. Rather, Plaintiff alleges only that Defendant accessed the emails and information with authorization, but for an improper purpose, which is the exact situation *Van Buren* made clear is not a CFAA violation.

Plaintiff nonetheless attempts to distinguish *Van Buren* from the facts alleged in the FAC by arguing that the defendant in *Van Buren* simply accessed information, while Defendant in this case took the further step to "obtain" the emails by forwarding them to her personal email account and "alter" the emails by materially altering the information in the emails and deleting them, which she did not have authorization to do. However, this distinction is immaterial if Plaintiff did not plead that Defendant entered the computer system or a part of the computer system, such as files, folders, or databases, that were off limits to her. 141 S. Ct. at 1662 (noting the primary question in determining if an individual exceeds authorized access is whether the individual obtained information located in particular areas of the computer that are off limits to him). Although Plaintiff alleges Defendant forwarded and altered the emails in an improper way, not only are there no facts in Plaintiff's FAC that allege she lacked the credentials to access those emails, but also multiple statements in the FAC directly contradicting that notion.

Additionally, Plaintiff attempts to distinguish *Van Buren* in that Defendant in this case exceeded her authorized access by altering and deleting emails, while *Van Buren* did not address such claims. The CFAA, however, "treats accessing and altering information identically by its plain terms." U.S.C. § 1030(e)(6); *Speckman*, 2021 US Dist. LEXIS 125034, at *14. By extension, the distinction relied on by Plaintiff relating to altering and deleting the emails is also immaterial without allegations that Defendant altered or deleted emails from a part of the system that was off limits to her. *See id.* While the FAC alleges the emails and documents Defendant deleted and altered were stored for backup protection and purposes on Plaintiff's dedicated archiving system, Plaintiff fails to allege Defendant was not authorized to access that archiving system. Doc. 10 at ¶ 47.

Accordingly, accepting the CFAA allegations in Plaintiff's FAC as true and drawing all reasonable inferences in favor of the nonmoving party, Plaintiff's Count II fails to state a claim upon which relief may be granted. Defendant's motion to dismiss is **GRANTED** as to Count II.

7

## II.    Count III - SCA Claim

Title 18 U.S.C. § 2701(a)(1-2) makes it illegal to "intentionally access[] without authorization a facility through which an electronic communication service is provided; or intentionally exceed[] an authorization to access that facility; and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system." Like the CFAA, § 2707 provides for a civil action for a person aggrieved by such violation. "'[E]lectronic communication service' means any service which provides to users thereof the ability to send or receive wire or electronic communications[.]" § 2510(15). Under the statute, "'electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" § 2510(12). "[E]lectronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" § 2510(17).

Here, Plaintiff alleges only that Defendant intentionally accessed Plaintiff's computer system, servers, and email program in a manner that exceeded her authorization from Plaintiff. Other courts have recognized the CFAA's "exceeds authorized access" phrase and the SCA's "exceeds an authorization to access" phrase as analogous. *See, e.g.*, *Cloudpath Networks v. Securew2 B.V.*, 157 F.Supp.3d 961, 986-7 (D. Colo. 2016). With that in mind, for much of the same reasoning detailed in the analysis of Plaintiff's CFAA claim, Plaintiff's allegations fail to establish that Defendant exceeded authorization in violation of the SCA. Once again, Plaintiff does not assert Defendant lacked authorization to access the alleged "facility through which an electronic communication service is provided." Instead, Plaintiff's allegations indicate Defendant was still employed with Plaintiff at the time she accessed the email system and had authorization to access her email and Plaintiff's computer network. "Where a party consents to another[']s access to its computer network, it cannot claim that such access was unauthorized." *Lasco Foods, Inc.,* 600 F. Supp. 2d at 1050. Thus, since Plaintiff afforded Defendant access to its computers, networks, and information, her allegedly improper use of information from these locations, without more, is not an SCA violation.

8

However, even if Plaintiff sufficiently alleged Defendant exceeded her authorized access, the SCA also requires pleading that the electronic communication that Defendant altered or obtained was in "electronic storage." "The electronic storage requirement is commonly misunderstood because the statutory definition of 'electronic storage' is much narrower than its name suggests." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.,* 793 F.3d 822, 839 (8th Cir. 2015). Under the SCA, "electronic storage" means (A) "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof," or (B) "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* These subsections have been further narrowed, with subsection (A) applying only to emails in the middle of transmission and subsection (B) applying only to emails saved for backup purposes. *Id.* at 839-42. Here, Plaintiff alleges that at the time Defendant obtained, altered, and/or deleted the emails and documents, they were stored on Plaintiff's dedicated archiving system for backup purposes and protection and thus were in electronic storage. However, these claims are refuted by contradictory allegations in the FAC.

When describing its electronic communication services, Plaintiff explained that the email system for employees electronically saves the sent and received email messages to a dedicated archiving system. Doc. 10 at ¶ 14. Plaintiff goes on to explain that versions of these messages are saved for backup and retention purposes and are kept "separate and apart from copies of the emails and files that may exist locally on an employee's computer or other device." *Id.* However, when alleging violations of both the CFAA and the SCA, Plaintiff notes "Nelson logged into the system on her company-issued computer and forwarded dozens of emails and documents from her Foley email account . . . to her personal email account." In alleging that Defendant obtained and altered the emails on her company-issued computer and from her Foley email account, Plaintiff concedes the obtained and altered emails were not those that Defendant saved for backup and retention purposes kept separate and apart from the copies of the emails that exist locally on the employee's computer, and thus the Court finds they are not alleged to have been in "electronic storage" within the meaning provided for in the SCA.

Because Plaintiff fails to sufficiently allege that any intentional access that exceeded authorization resulted in access to a communication while it was in "electronic storage" as required to fall within the protection afforded by the SCA, Count III fails to state a claim upon which relief may be granted. *See Anzaldua*, 793 F.3d at 839-42.

9

Therefore, accepting the allegations of the FAC as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff's Count III fails to state a claim for which relief may be granted. Defendant's motion to dismiss is **GRANTED** as to Count III.

## III. Subject Matter Jurisdiction - Amount in Controversy

With the dismissal of Counts II and III under the CFAA and SCA respectively, Plaintiff's assertion of federal question jurisdiction under 28 U.S.C. § 1331 no longer stands. Doc. 10 at ¶ 8. However, Plaintiff also invokes this Court's subject matter jurisdiction on the basis of diversity under 28 U.S.C. §1332. A district court has original jurisdiction over a civil action in which the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Plaintiff adequately alleges, and it appears to be undisputed, that the parties in this matter are citizens of different states. However, Defendant challenges the amount Plaintiff alleges is in controversy. "If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Kopp v. Kopp*, 280 F.3d 883, 884-85 (8th Cir. 2002) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188-89 (1936)). "Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994). "The legal certainty standard is met where the 'legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *Schubert v. Auto Owners Ins. Co.,* 649 F.3d 817, 822 (8th Cir. 2011) (quoting *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010)).

The Eighth Circuit recognizes that in an action for declaratory or injunctive relief "it is well established that the amount in controversy is measured by the value of the object of the litigation." *James Neff Kramper Family Farm Partnership v. IBP, Inc.,* 393 F.3d 828, 833 (8th Cir. 2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)). Additionally, under Missouri law, the Court recognizes a right to punitive damages is contingent on the establishment of "a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequence." *Larkin*, 41 F.3d at 389 (quoting *Burnett v. Griffith*, 769 S.W.2d 780,77 (Mo. 1989)). "[P]unitive damages are included in the amount in controversy," but "the existence of the

required amount must be supported by competent proof." *OnePoint Sols., LLC v. Borchert,* 486 F.3d 342, 348 (8th Cir. 2007) (quoting *Larkin,* 41 F.3d at 388-89). Additionally, "statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction." *Peterson v. Travelers Indem. Co.,* 867 F.3d 992, 995 (8th Cir. 2017) (citing *Crawford v. F. Hoffman-La Roche Ltd.,* 267 F.3d 760, 766 (8th Cir. 2001)).

Here, Plaintiff alleges actual damages of $35,000. To satisfy the federal jurisdictional amount, Plaintiff relies on its requests for injunctive relief damages, punitive damages for Defendant's breach of duty of loyalty, and attorney's fees under the MCTA.[3] Although Plaintiff does not allege facts showing that its claim for injunctive relief, punitive damages, or attorney's fees would exceed $75,000, it is not legally impossible that Plaintiff could recover at least that amount. *See Peterson,* 867 F. 3d at 995 (retaining subject matter jurisdiction on a claim where plaintiff only alleged $5,000 in medical damages plus tort damages, punitive damages, and attorney's fees because, although plaintiff had not alleged facts showing her tort or punitive damages or attorney's fees would exceed $75,000, it was not legally impossible for plaintiff to recover at least that amount). Accordingly, this Court has subject matter jurisdiction.

## Conclusion

After careful consideration and for the reasons above, the Court **ORDERS** as follows:

(1) Defendant's motion to dismiss is **GRANTED** as to Counts II and III; and

(2) Defendant's motion to dismiss is **DENIED** as to Count I (breach of contract), Count IV (violation of the MCTA, §§ 537.525, 569.095, Rev. Stat. Mo.), and Count V (breach of the duty of loyalty).

(3) As discussed in footnote 1, Plaintiff's Motion to Strike (Doc. 25) is **DENIED as MOOT. IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 30, 2021

---

[3] Plaintiff seeks attorney's fees under Mo. Rev. Stat. § 537.525.2, which allows the Court to award reasonable attorney's fees to a prevailing Plaintiff.

11