# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FOLEY INDUSTRIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-00309-CV-RK |
| KAMMY NELSON, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant Kammy Nelson's motion to dismiss Count III of the Second Amended Complaint (breach of fiduciary duty). (Doc. 53.) The motion is fully briefed. (Docs. 54, 55, 59). For the reasons below, Nelson's motion to dismiss Count III is **DENIED**.

## Background

Plaintiff Foley Industries, Inc. ("Foley") serves as the exclusive Caterpillar dealer for Kansas and western Missouri. (Doc. 50 at ¶ 10.) Foley provides services related to the sale and rental of construction equipment and equipment for the oil and gas industries, construction solutions services, and sells parts and mechanical services for heavy trucks, engines, and hydraulic machines. (*Id.*) On or about July 13, 2020, Nelson was hired as a credit manager for Foley. (*Id.* at ¶ 13.) As part of her daily duties, Nelson managed the credit department and performed many tasks including exercising control over accounts receivable, performing credit underwriting, establishing bad debt reserves, managing past-due accounts, coordinating with Foley's legal department, collaborating with internal customers, managing credit risks, and administering credit policies and standards. (*Id.* at ¶ 14.) As credit manager, Nelson had access to confidential and proprietary information belonging to Plaintiff and its customers. (*Id.* at ¶ 16.) To ensure protection of the confidential information, Foley required Nelson to sign a non-disclosure agreement ("NDA"), which Nelson signed on July 13, 2020. (*Id.* at ¶ 17.)

By the NDA's terms, Nelson was prohibited from disclosing Foley's proprietary information to anyone, except on a need-to-know basis, and was prohibited from using the proprietary information for her benefit or anyone's benefit other than Foley's. (*Id.* at ¶ 19.) Additionally, at the start of her employment, Nelson obtained, acknowledged, and agreed to read thoroughly a copy of Foley's employee handbook. (*Id.* at ¶ 20.) The handbook provided Nelson's

obligation not to use Foley's proprietary information for purposes outside her employment with Foley, that employees were expected to use company property only for authorized purposes, and that employees had to return such property when their employment was terminated. (*Id.* at ¶¶ 21-22.) The handbook specifically indicated that all electronic devices, equipment, and information transmitted by, received from, or stored in company systems were company property and were only to be used in accordance with company policy. (*Id.* at ¶ 23.) Foley's written policy prohibited Nelson from transmitting copyrighted materials without permission, transmitting nonpublic customer information without taking steps reasonably intended to ensure that the information is delivered to the proper individuals who are authorized to receive such information for a legitimate use, and using email for non-company business or for personal gain. (*Id.* at ¶ 24.) Nelson "was authorized to access and use Foley's computers and information-technology system but such access and use was limited to doing so for business purposes and supporting the goals, objectives, and business of Foley." (*Id.* at ¶ 25.) Nelson was not authorized "to (1) access any confidential information or Proprietary Information for the purpose of deleting or modifying it; (2) copy or forward the information to her personal computer or personal email address; [or] (3) modify, alter, or falsely misrepresent original emails, including emails sent by other employees." (*Id.*)

On January 15, 2021, Nelson received information indicating her employment with Foley would be terminated on January 18, 2021. (*Id.* at ¶ 28.) After receiving that information, on or about January 15 through January 17, 2021, while at the office or using remote access to Foley's computer systems, Nelson logged into the system on her company-issued computer and forwarded dozens of emails and documents from her Foley email account, KJNelson@foleyeq.com, to her personal email account, kammynelson@gmail.com. (*Id.* at ¶¶ 29-30.) The forwarded emails contained Foley's proprietary information and/or confidential information about and belonging to Foley's customers. (*Id.* at ¶ 31.) Specifically, these emails contained credit information about Foley's customers, including banking information and account numbers; internal accounts receivables, collections, and credit reports that contained Foley's financial analysis of its accounts receivables and confidential information about specific customers' credit limits, payment history, and amounts owed; internal discussions about Foley's business processes, procedures, and practices; internal emails about private personnel matters; and emails subject to attorney-client privilege containing legal advice from Foley's counsel. (*Id.*) Nelson then deleted the emails she

forwarded to her personal account from her company-issued computer and/or Foley's server. (*Id.* at ¶ 33-34.)

Additionally, Nelson modified and altered a number of emails, including one sent on January 13, 2021, by Foley's Vice President of Sales, Jeff Fouraker, to Nelson's supervisor, Steve Liggett. (*Id.* at ¶¶ 35-36.) The original email sent by Fouraker stated "Here's another." (*Id.* at ¶ 36.) On or about January 16, 2021, Nelson altered and modified the original email to insert the statement "result of your credit nazi" after the text "Here's another." (*Id.* at ¶ 37.) Nelson then forwarded the altered email and accompanying thread to her personal email account as well. (*Id.* at ¶ 39.) Additionally, on January 15, 2021, after learning of her likely termination, Nelson modified and altered an email from January 14, 2021, in which Nelson's supervisor, Steve Liggett emailed Nelson about possibly hiring an employee for Foley's Credit Department, writing to Nelson, "Would you forward the email with the resumes of the temp you are wanting to start next week? I'm just curious. Thanks." (*Id.* at ¶¶ 41-42.) Specifically, Nelson wrote and attributed the following statement to Mr. Liggett: "Make Linda's life a living hell, so we can get her out. She's too slow." (*Id.* at ¶ 42.) Nelson then forwarded the modified and altered January 14, 2021 email from her Foley email account to her personal email account. (*Id.* at ¶ 43.) The emails and documents Nelson obtained, deleted, and altered were stored for backup protection on Foley's dedicated archiving system. (*Id.* at ¶ 45.)

Unaware that Nelson had forwarded and altered emails, on January 18, 2021, Foley terminated Nelson's employment for unrelated reasons. (*Id.* at ¶ 46.) After Nelson's termination, Foley routinely attempted to secure its technology infrastructure and noticed unusual activity on Nelson's account. (*Id.* at ¶ 47.) Foley then conducted an internal preliminary examination into the unusual activity and retained a third-party information technology expert to complete a forensic review of Nelson's company-issued computer devices and her Foley email account to determine the full scope of the unusual activity. (*Id.* at ¶¶ 48-49.) Foley alleges between its internal investigation, third-party forensic investigation, and associated legal fees, Foley incurred over $35,000 in damages as a result of Nelson's actions. (*Id.* at ¶ 50.)

Foley requested Nelson return and/or destroy all electronic and hard copies of the proprietary information she forwarded to her personal email account. (*Id.* at ¶ 51.) Foley believes Nelson is still in possession of the proprietary information she forwarded to her personal email account while using her company-issued computer and the Foley email account, which leaves

3

Foley at risk of Nelson providing this information to competitors or otherwise using the information for her own or a third-party's benefit. (*Id.* at ¶ 53-54.)

Foley filed its Second Amended Complaint ("FAC") against Nelson on June 8, 2022, asserting claims for: breach of contract (Count I); violation of the Missouri Computer Tampering Act, §§ 537.525, 569.095 RSMo. (Count II); and breach of fiduciary duty (Count III).

In the instant motion, Nelson argues Foley's Count III for breach of fiduciary duty should be dismissed for failure to state a claim.

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss a party's claims for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quotation marks and citation omitted). "In addressing a motion to dismiss, [t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation and quotation marks omitted).

**Discussion**

Nelson brings a motion to dismiss for failure to state a claim as to Count III, which asserts a claim for breach of fiduciary duty. Nelson argues Foley has not plausibly alleged the existence of a fiduciary relationship, and even if such duty could potentially exist, Foley has not plausibly alleged a breach of that duty, causation, and damages. (Doc. 54.)

Under Missouri law, "[w]hen breach of fiduciary duty is asserted as a tort claim, as here, the proponent must establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012) (internal quotation marks omitted). The existence of a fiduciary duty is a legal question, and the occurrence of a breach is a

question for the fact finder. *Id.* (citing *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 481 (Mo. banc 2005)).

I. **Duty**

"Generally, an employer-employee relationship, without more, is insufficient to cause a confidential relationship to exist as to knowledge naturally acquired during employment." *Id.* at 16 (internal quotation marks omitted). "A confidential relationship between employer and employee giving rise to fiduciary duties exists if (1) there is an express understanding that the employee is receiving confidential information, or (2) the employee acquired the information in such a way that he must have known of its confidential nature." *Pony Computer, Inc. v. Equus Computer Sys. of Mo., Inc.*, 162 F.3d 991, 997 (8th Cir. 1998) (citing *Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 35-36 (Mo. 1966)).

In analyzing employer-employee relationships in this context, Missouri courts have found no confidential relationship exists (1) where an employee is entrusted with important information about the employer, but that information is not "entrusted solely" to that employee, (2) that employee was not asked and did not agree to keep certain business information secret, and (3) the information the employee possessed was known or easily obtainable by others. *W. Blue Print Co., LLC*, 367 S.W.3d at 15 (citing *Walter E. Zemitzsch v. Harrison*, 712 S.W.2d 418 (Mo. App. E.D. 1986)). Similarly, where an employer failed to take any steps to keep matters secret or confidential, did not require its personnel to sign non-compete agreements, and the information the employee defendants used was general information obtained in the ordinary course of their employment, rather than information gained in confidence through a specific agency, no confidential relationship arose. *Id.* (citing *Trieman*, 409 S.W.2d at 22, 27).

Here, Foley alleges Nelson expressly agreed that she would receive and protect Foley's confidential information (Doc. 50 at ¶¶ 17-25), understood the information she would receive was confidential and proprietary (*id.*, ¶¶ 16, 17, 26), and had access to and control over confidential and proprietary information (*id.* at ¶¶ 16, 26). Foley alleges Nelson had discretion to use and handle confidential information, including performing credit underwriting, establishing bad debt reserves, managing past due accounts, and managing credit risks. (*Id.* at ¶ 14.) Foley also alleges Nelson had an express understanding as to the confidential nature of the information that she routinely used and that Nelson was aware of the confidential nature of the information provided to her. (*Id.* at ¶¶ 16-26.) Unlike in *Western Blue Print* and *National Rejectors*, here Foley alleges

Nelson was asked and did agree to keep business information a secret (by way of the non-disclosure agreement), and that Foley took steps to keep matters secret or confidential, including asking its personnel to sign a non-disclosure agreement.

Accepting Foley's allegations as true, the FAC plausibly alleges the existence of a fiduciary duty owed by Nelson to Foley.

II. **Breach**

Nelson argues Foley's claim for breach of fiduciary duty boils down to an assertion that Nelson acted against Foley's interests by sending emails to her personal email account, but it fails to plausibly allege Nelson used those emails or the materials attached in any way, either for her own benefit or the benefit of a third party. Nelson contends there is no allegation that Nelson was acting contrary to Foley's interests by directly competing with Foley, and "[w]ith this missing link, there is no breach of fiduciary duty." (Doc. 54 at 6.)

Key to the analysis of whether a breach is alleged "is the determination of where the fiduciary obligation ends and where the personal right of independent action begins." *Walter E. Zemitzsch, Inc.*, 712 S.W.2d at 422. "[A] fiduciary relationship between principal and agent obligates the agent to fully disclose all material facts to the principal, to strictly avoid misrepresentation and in all respects to act with utmost good faith." *McKeehan v. Wittels*, 508 S.W.2d 277, 281 (Mo. App. 1974).

Here, Foley alleges how Nelson acted contrary to the interests of Foley by, among other things, absconding with Foley's confidential information by forwarding many emails and documents to her personal email account, manipulating and altering emails and misrepresenting what Foley's employees did and said, and attempting to delete various emails and documents. (Doc. 50 at ¶¶ 28-43, 72.) Nelson purposefully did all of this secretly with Foley only discovering Nelson's actions after the fact. (*Id.*, ¶¶ 46-48.) Foley alleges Nelson was acting for her own benefit and contrary to the interests of Foley and "with the intent and purpose of harming Foley in its business." (*Id.*, ¶¶ 72-73.)

In light of Nelson's alleged fiduciary duty of full disclosure and prohibition against misrepresentation, Foley's allegations of concealed purposeful misrepresentations and

6

Case 4:21-cv-00309-RK   Document 60   Filed 08/03/22   Page 6 of 8

appropriating confidential and proprietary information are sufficient to plausibly state a claim on the breach element of Plaintiff's claim.[1]

### III. Causation and Damages

Finally, Defendant argues Plaintiff makes a single conclusory allegation constituting a bare recitation of the third and fourth elements of its breach of fiduciary duty claim, and as such, it should not be taken as true and is not sufficient to state a plausible cause of action. (Doc. 54 at 6.) Defendant further asserts Plaintiff has not clearly articulated what fiduciary duty Defendant supposedly owed to Plaintiff, or how Defendant may have breached that duty, without which foundation Plaintiff cannot plausibly allege it has suffered damages from any alleged breach of fiduciary duty. (*Id.* at 7.) Plaintiff counters that Count III, containing its claim for breach of fiduciary duty, expressly "incorporates the preceding paragraphs" in the Second Amended Complaint, which must be read with Plaintiff's allegation that it has been damaged and harmed as a direct and proximate result of Defendant's breach.[2] (Doc. 55 at 8 (citing Doc. 50 at ¶¶ 68, 74).) Plaintiff contends these paragraphs contain specific allegations detailing exactly the harm, damage, and costs incurred as a result of Defendant's actions, including internal investigation and assessment costs, external forensic costs, and associated legal fees. (Doc. 55 at 8 (citing Doc. 50 at ¶¶ 48-54).)

---

[1] Defendant raises a new argument as to this element of Plaintiff's claim for the first time in her reply brief, contending, "[a]t bottom, [Plaintiff] attempts to spin a breach of fiduciary duty claim out of [Defendant's] alleged violation of the non-disclosure agreement. But that alleged contractual claim is already the subject of Count I and Missouri law precludes [Plaintiff] from recasting its contract claim as a tort claim." (Doc. 59 at 8.) The Court declines to address this argument. *See Mahaney v. Warren County*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time . . . in a reply brief.") (citations omitted).

[2] "Courts within the Eighth Circuit have generally rejected arguments against incorporation-by-reference pleading where the pleading style does not make understanding the claims more burdensome." *Campbell v. Lake Reg'l Med. Mgmt., Inc.*, No. 2:19-CV-04124-NKL, 2019 WL 4228894, at *3 (W.D. Mo. Sept. 5, 2019) (citing *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 898 (D. Minn. 2014) (finding that a counterclaim which incorporated by reference the prior paragraphs within seven separate counts was nonetheless "more than sufficient to put [Plaintiff] on notice" where each count "explicitly state[d] the basis for relief under each legal theory"); *SEC v. Morriss*, No. 4:12-CV-80 CEJ, 2012 WL 6822346, at *6 (E.D. Mo. Sept. 21, 2012) (finding that Defendants' challenge to incorporation of prior allegations "overstates the difficulty of determining which conduct is attributed to him or which securities statute the conduct is alleged to have violated."); *SEC v. Das*, No. 8:10CV102, 2010 WL 4615336, at *6 (D. Neb. Nov. 4, 2010) (dismissing challenge to pleading that incorporated prior allegations where factual allegations are "relatively brief and clear," and the complaint "does not contain hundreds of paragraphs" or involve numerous defendants and voluminous documents)). Here, the Court finds Plaintiff's incorporation of preceding paragraphs does not materially increase the burden of understanding the factual allegations underlying Plaintiff's claim.

The Amended Complaint alleges that due to Defendant's actions "[Plaintiff] conducted an internal preliminary examination of its computer systems, email system, computer servers, and electronic devices." (Doc. 50 at ¶ 48.) Plaintiff further details that the "examination involved a substantial amount of hours and investigation by Foley's IT and legal staff." *Id.* Plaintiff alleges

> [t]o determine the full scope of [Defendant's] actions, the damage they caused, and any threats to the integrity of its computer systems, [Plaintiff] then retained a third-party information technology expert to complete a forensic review of [Defendant's] company-issued computer devices and her Foley email account to determine the full scope of [Defendant's] conduct, including, among other things, what files were forwarded, if files were forwarded to any other party, whether any other files were deleted, whether documents had been transferred, [Defendant's] usage history on [Plaintiff's] computers, and the extent to which [Defendant] altered or modified emails or other parts of [Plaintiff's] computer system.

(*Id.* at ¶ 49.) Between Plaintiff's internal investigation, third-party forensic investigation, and associated legal fees, Plaintiff alleges it incurred over $35,000 as a result of Defendant's actions. (*Id.* at ¶ 50.)

The Court finds Plaintiff's allegations as to causation and damages are not bald assertions or conclusory allegations, but rather constitute sufficient factual allegations to plausibly plead the causation and damage elements of Plaintiff's breach of fiduciary duty claim.[3]

**Conclusion**

After careful consideration and for the reasons above, Defendant's motion to dismiss is **DENIED**.

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 3, 2022

---

[3] Defendant raises an additional argument for the first time in her reply brief as to causation and damages, asserting the type of damages Plaintiff alleges are "governed by the civil enforcement provision of the Missouri Computer Tampering Act" and so "[a]llowing [Plaintiff] to separately assert these alleged damages as the basis of its fiduciary duty claim circumvents the legislative intent of the exclusive remedy provision in" the Act. (Doc. 59 at 8-9.) The Court declines to address this argument. *See Mahaney*, 206 F.3d at 771 n.2.